2022 IL App (1st) 210925-U

No. 1-21-0925

Order filed March 2, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| PAUL CHATMAN, | ) |
| | ) |
|     Petitioner-Appellant, | ) |
| | ) |
|   v. | ) Appeal from the |
| | ) Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Cook County. |
| | ) |
|     Respondent. | ) No. 20 CH 05779 |
| | ) |
| (Rob L. Jeffreys, the Director of the Illinois Department of | ) Honorable |
| Corrections, Brendan E. Kelly, the Director of the Illinois | ) Cecilia A. Horan, |
| State Police, and Craig Findley, the Chairman of the | ) Judge Presiding. |
| Illinois Prisoner Review Board, | ) |
| | ) |
|     Appellees.) | ) |

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's dismissal of petitioner's petition for a temporary restraining order where the Murderer and Violent Offender Against Youth Registration Act is not an unconstitutional *ex post facto* law.

¶ 2     This appeal arises following the circuit court's dismissal of petitioner, Paul Chatman's, petition for a temporary restraining order. Chatman sought the restraining order in order to exempt him from having to register pursuant to the Murderer and Violent Offender Against Youth Registration Act (Registration Act) (730 ILCS 154/1 *et seq.* (West 2020)) following his release from prison. Chatman alleged that the Registration Act violated the *ex post facto* clauses of the United States and Illinois constitutions because it impermissibly increased the punishment for an offense that he committed before the Registration Act was enacted. The circuit court dismissed the petition finding, *inter alia*, that the Registration Act did not violate *ex post facto* principles.

¶ 3     Chatman now appeals contending that the circuit court erred in dismissing his petition. Chatman asserts that the Registration Act is unconstitutional as applied to him because it retroactively imposes a greater punishment on him than he received when he was convicted. Chatman contends that the Registration Act imposes certain burdens on him regarding reporting, and subjects him to the possibility of re-incarceration if he fails to abide by the mandates of the statute. Chatman maintains that the Registration Act therefore violates the *ex post facto* clauses because it punishes him in a manner that was not permissible when he was convicted and sentenced. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                                    I. BACKGROUND

¶ 5     In September 2020, Chatman filed a *pro se* petition for an "Emergency *Ex Parte* Temporary Restraining Order." In his petition, Chatman sought a temporary restraining order exempting him from registering under the Registration Act upon his release from prison. Chatman alleged that in 1984, he was convicted of first degree murder and sentenced to an extended term sentence of 75 years' imprisonment. Chatman asserted that upon his release from prison in June 2020, he was required to register under the Registration Act. Chatman contended that, as applied to him, the

Registration Act was punitive and violated the *ex post facto* clauses of both the United States and Illinois constitutions. Chatman asserted that he was convicted and sentenced in 1984, but the Registration Act did not go into effect until 2012. Chatman contended that requiring him to register under the Registration Act would result in irreparable harm.

¶ 6     Although his petition was addressed solely at the State of Illinois, the notice of filing was directed at the appellees: Rob L. Jeffreys, the Director of the Illinois Department of Corrections (IDOC), Brendan E. Kelly, the Director of the Illinois State Police (ISP), and Craig Findley, the Chairman of the Illinois Prisoner Review Board (PRB) (collectively, the "State Officials").

¶ 7     The State Officials filed a motion to dismiss Chatman's petition for a temporary restraining order pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1(a)(1) (West 2020)). The State Officials contended that the petition should be dismissed pursuant to section 2-619(a)(1) because the claims were barred by the doctrine of sovereign immunity. The State Officials pointed out that the State of Illinois was the only named defendant and that sovereign immunity protected the State from being named as a defendant in this action.

¶ 8     The State Officials also contended that the action should be dismissed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) because the petition did not contain any well-pled allegations against of the State Officials named in the notice of filing. The State Officials noted that the petition did not even mention any of the State Officials beyond a reference to the "Department of State Police," and the fact that Chatman had been in IDOC custody since his conviction in 1984. The State Officials asserted, therefore, that the petition failed to raise any allegations against them.

¶ 9     Finally, the State Officials contended that the petition should be dismissed pursuant to section 2-615 because the petition failed to adequately allege any violation of the *ex post facto*

clauses of the United States and Illinois constitutions. The State Officials asserted that the Registration Act was civil and regulatory in nature and not punitive. The State Officials noted that in *United States v. Leach*, F. 3d 769, 773 (7th Cir. 2011), the Seventh Circuit Court of Appeals found that registration legislation, even if passed after the date of an individual's conviction, is not punitive in nature. The State officials concluded that the Registration Act's express purpose was to protect the public at large, and not to serve as an additional punishment to offenders, such as Chatman.

¶ 10    Chatman filed a *pro se* response to the State Officials' motion to dismiss in which he contended that the action was not barred by sovereign immunity because the State Officials were named in the notice of filing. Chatman asserted that the three State Officials were liable "in their distinct governing capacities" and each had a role in enforcing the terms of the Act. Chatman also contended that the Act violated the *ex post facto* clauses because it retroactively mandated a harsher punishment than he received when he was originally sentenced.

¶ 11    The court held oral argument on the State Officials' motion to dismiss where both the State Officials and Chatman were given an opportunity to orally present their arguments on the motion to dismiss. The court subsequently entered a written order on the State Officials' motion to dismiss. The court found that it did not have jurisdiction over Chatman's petition because it was directed solely against the State. The court noted that although the State Officials were named in the notice of filing for the petition, they were not named in the petition and were not parties to this action. The court found that it did not have jurisdiction over the State, the sole named defendant, under the doctrine of sovereign immunity.

¶ 12    The court also found that the Registration Act was not an unconstitutional *ex post facto* law. Relying on this court's ruling in *Miranda v. Madigan*, 381 Ill. App. 3d 1105 (2008), the court

found that the Act was a "civil regulatory scheme" and non-punitive because it did not impose increased liability. The court therefore granted the State Officials' motion to dismiss with prejudice. The court stated that it denied Chatman an opportunity to replead because Chatman would be unable to plead facts that would entitle him to relief. Chatman now appeals.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, Chatman contends that the court erred in granting the State Officials' motion to dismiss. Chatman contends that the court erred in finding that it lacked jurisdiction over the State Officials because all three "acted individually" and were "individually served." Chatman also asserts that the court erred in finding that the Registration Act was not an unconstitutional *ex post facto* law as applied to him where the Registration Act creates new obligations and duties for him after his release, therefore retroactively increasing his punishment. Finally, Chatman asks this court to "decipher and clarify" the circuit court's "confusion" regarding whether the Registration Act is punitive or civil in nature.

¶ 15                              A. The Registration Act

¶ 16    Before we proceed to the merits of Chatman's petition and appeal, we will first examine the history of the Registration Act. As will be discussed later, it is first important to observe that the Registration Act and the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.*) both have roots in the 1986 "Habitual Child Sex Offender Registration Act" (1986 Act). *In re M.A.*, 2015 IL 118049, ¶¶ 30-31. The 1986 Act required offenders convicted of certain enumerated sex offenses to register with local law enforcement for a period of time after the offenders' release from prison. *Id.* In 1996, the title of the 1986 Act was amended to SORA. (730 ILCS 150/1 *et seq.* (West 1996)). The 1996 amendments to SORA also expanded the statute to include enumerated sex offenses against adult victims, as well as certain offenses against child victims. *Id.* ¶ 31. Ten

years later, the legislature enacted the Child Murderer and Violent Offender Against Youth Registration Act (Violent Offender Act) 730 ILCS 154/1 *et seq.* (West 2006)). *Id.* The Violent Offender Act was later amended in 2012 into what is now the Registration Act, which requires, *inter alia*, offenders convicted of first-degree murder of an adult to register with law enforcement upon their release from prison. 730 ILCS 154/5(c-6) (West 2012). In introducing the bill which would become the 2006 Violent Offender Act, Representative Fritchey stated:

" 'Ladies and Gentlemen, this is actually a very serious issue. Last week we had a number of Bills come up and I'm sure we will this week and next week again, with continual crackdowns on individuals that are on the sex offender registry. What a lot of you may not recognize is that *there are a number of individuals that are on that registry whose crimes have nothing to do with the sexual offense*. They may have to do with a murder if the victim was a minor. It may have to do with aggravated kidnapping with certain offenses along those lines. *What this piece of legislation does is clean up, 10 years too late, the sex offender registry to make sure that only those individuals that've [sic] committed sex offenses remain on that registry*. What is [*sic*] does not do is take these people out of the purview of law enforcement. It simply shifts them over into a new registry which will be called the Violent Offender Against Youth Registry. We would still be able to monitor them, we'd still be able to track them, *but we will not further stigmatize individuals who have already committed a crime and come out and paid their time by calling them sex offenders when they're actually not.*' " (Emphases in original.) *Id.* (quoting 94th Ill. Gen. Assem., House Proceedings, Feb. 22, 2006, at 13 (statements of Representative Fritchey)).

The purpose of the Violent Offender Act, and consequently the Registration Act, was therefore to remove nonsexual offenders from SORA because the legislature was concerned about the greater stigma associated with being labeled as a sex offender rather than a violent offender. *Id.* ¶ 32.

¶ 17    We observe that in his briefs before this court and in the circuit court, Chatman took exception to comparisons between his case and matters involving SORA. In the circuit court, Chatman suggested that the State Officials were attempting to bias the trial court against him by making reference to sexual offenses. However, it is clear that both the State Officials and the circuit court drew comparisons between the case at bar and those involving registration under SORA because both circumstances involve registration in a database after release from prison, and both acts derived from the same legislative history. In the context of this appeal, the nature of the offense is irrelevant, and the sole consideration is the registration requirement. We rely on cases involving the registration requirement under SORA for the same reason, and not to suggest some sort of equivalence between Chatman's conviction in this case and the convictions involved in the cases analyzing the registration requirement under SORA.

¶ 18                              B. *Ex Post Facto*

¶ 19    We will now address the merits of Chatman's contentions on appeal with an understanding of the shared history between the registration requirements pursuant to SORA and the Registration Act. We will also solely address whether the circuit court properly dismissed Chatman's petition based on its finding that the Registration Act is not an unconstitutional *ex post facto* law. Although the circuit court dismissed the petition for a variety of reasons, including sovereign immunity, we find that the *ex post facto* analysis is dispositive and that a resolution on the merits is preferable here; particularly where Chatman could have filed an amended complaint naming the State

Officials to avoid dismissal based on naming the State as the sole defendant. As such, we will address Chatman's contention that the Registration Act is an unconstitutional *ex post facto* law.

¶ 20    The *ex post facto* clauses of the United States and Illinois constitutions prohibit retroactive application of a law inflicting greater punishment than the law in effect when a crime was committed. *People v. Cornelius*, 213 Ill. 2d 178, 207 (2004); see U.S. Const., art. 1, § 10; Ill. Const. 1970, art I, § 16. A law is *ex post facto* if it is retroactive and disadvantageous to a defendant. *Fletcher v. Williams*, 179 Ill. 2d 225, 230 (1997). A law is disadvantageous to a defendant if it criminalizes an act innocent when performed, increases the punishment for an offense previously committed, or alters the rules of evidence making a conviction easier. *People v. Ramsey*, 192 Ill. 2d 154, 157 (2000). Illinois courts interpret our own *ex post facto* clause " 'in step' " with United States Constitution's *ex post facto* clause. *Cornelius*, 213 Ill. 2d at 207 (quoting *Barger v. Peters*, 163 Ill. 2d 357, 360 (1994)). "Accordingly, the Illinois *ex post facto* clause does not provide any greater protection than that offered by the United States Constitution." *Id.*

¶ 21    Here, Chatman contends that the Registration Act is disadvantageous to him because it retroactively increases the punishment for an offense he already committed. Chatman asserts that the Registration Act imposes additional burdens on him after his release from prison such as requiring him to report various aspects of his life after his release from prison. Chatman maintains that these requirements were not part of his sentence when he was sentenced in 1984.

¶ 22    This court and our supreme court, however, have repeatedly recognized that registration statues do not violate the *ex post facto* clauses because they are not punitive. See, *e.g.*, *People v. Malchow*, 193 Ill. 2d 413, 420-24 (2000); *People v. Adams*, 144 Ill. 2d 381, 389 (1991); *Lesher v. Trent*, 407 Ill. App. 3d 1170, 1175 (2011); *Miranda*, 381 Ill. App. 3d 1105. These cases have consistently held that registration requirements are intended to protect the public rather than punish

the offender, and requiring offenders to register with local law enforcement after their release from prison is not "punishment." In *Malchow*, a case which concerned the registration and notification requirement under SORA, the supreme court stated: "After considering all of the relevant factors, we conclude that the requirements of the Notification Law are nonpunitive. We have previously held that requiring sex offenders to register does not constitute punishment." *Malchow*, 193 Ill. 2d at 424 (citing *Adams*, 144 Ill. 2d at 386-90).

¶ 23    We find this court's decision in *Miranda*, which concerned a prior version of the Registration Act, well-reasoned. In *Miranda*, the plaintiff filed a complaint for a declaratory judgment against the Attorney General of Illinois and the Illinois Department of the State Police, seeking a declaration that after his release from prison he would not be required to register under the Violent Offender Act ((730 ILCS 154/1 *et seq.* (West 2006)), which later was amended to the Registration Act. *Miranda*, 381 Ill. App. 3d at 1105. In the circuit court, the plaintiff denied that he was challenging the Violent Offender Act as an *ex post facto* punishment, but the defendants contended in their motion to dismiss to the plaintiff's argument was "essentially" an *ex post facto* argument. *Id.* at 1106. The circuit court granted the defendant's motion to dismiss " '[f]or the reasons stated by the Defendants in their Motion to Dismiss.' " *Id.*

¶ 24    On appeal, this court analyzed the plaintiff's contentions as an argument that the Violent Offender Act was an *ex post facto* law as applied to him. *Id.* at 1108. The court first recognized that the Violent Offender Act was developed from SORA and the two acts were "very similar." *Id.* at 1107. In rejecting the plaintiff's contentions, this court found that even though the Violent Offender Act imposed a duty on the plaintiff that did not exist at the time of his conviction, it did not violate *ex post facto* principles because the intent of the statute was not to provide further punishment. *Id.* at 1108-09. The court found that the intent of the Violent Offender Act was to

protect the public, not to punish the offender, and the effect of the statute was not so punitive that it negated the legislature's non-punitive intent. *Id.* 1108-09 (citing *Malchow*, 193 Ill. 2d at 420-21). It also found that the effect was non-punitive because although registration requirements place an additional burden on offenders, they "do not place an affirmative disability or restraint on offenders, or *** they do not impose increased liability." *Id.* at 1109 (citing *Malchow*, 193 Ill. 2d at 421). In essence, registration is not "punishment" because the burden imposed on those required to register is not substantial enough to constitute punishment. *Lesher*, 407 Ill. App. 3d at 1175 (citing *Adams*, 144 Ill. 2d at 388). Therefore, the retroactive application of the Registration Act and its amendments does not violate *ex post facto* principles. *Id.*

¶ 25    We will briefly address two additional arguments raised by Chatman in support of his contention that the circuit court erred in dismissing his petition. He first asks this court to "clarify" the lower court's "confusion" regarding whether the Registration Act is civil or punitive in nature. Chatman represents that following oral argument on the State Officials' motion to dismiss, the trial court stated " 'there is a little bit of confusion about whether the legislative intent of the Registration Act is punitive or civil in nature.' " This, however, is a misrepresentation of the trial court's comments and the direct quote that Chatman included in his brief does not appear in the record. Rather, the court's reference to "confusion" was based on the Seventh Circuit's ruling in *Leach*, 639 F. 3d 769 (abrogated on other grounds by *Nichols v. United States*, 578 U.S. 104 (2016)). *Leach* involved the registration requirement pursuant to the Sex Offender Registration and Notification Act (SORNA). The circuit court noted that the Seventh Circuit referred to the "penal nature" of the statute, but also discussed how it was a civil statute. The circuit court found that analysis created "a little confusion." The circuit court thus did not express confusion about the

nature of the Registration Act and its written order granting the State Officials' motion to dismiss demonstrates that it understood the Registration Act perfectly well.

¶ 26    Nonetheless, the ruling in *Leach* actually supports our conclusion here. In reviewing registration requirements under SORNA that were similar to those in the Registration Act and under SORA, the Seventh Circuit found that the SORNA registration requirements did not violate the *ex post facto* clause because it only targeted conduct taken by the offender after the enactment of the statute. *Id.* at 773. The Seventh Circuit also recognized that to violate the *ex post facto* clause, a law must be both retrospective and penal. *Id.* The Seventh Circuit found that whether "a comprehensive registration regime targeting only sex offenders is penal *** is not an open question." *Id.* The Seventh Circuit joined other courts of the circuit court of appeals in finding that SORNA was a regulatory, rather than penal statute. *Id.*

¶ 27    Here, too, the registration requirements under the Registration Act are not penal. They also target conduct that occurred only after the enactment of the statute. We therefore find no "confusion" stemming from *Leach* or the trial court's discussion of that case in relation to its ultimate ruling.

¶ 28    Finally, Chatman contends for the first time in his reply brief that the Registration Act violates the "Single Subject Rule" because the Violent Offenders Act originally required registration only for offenders convicted of certain offenses against *youth*, but the 2012 amendments added registration requirements for offenders convicted of certain offenses against *adults*. Chatman also points out that the word "Youth" is still included in the title of the Registration Act. Chatman points out that he was convicted of murdering an adult, not a youth.

¶ 29    First, we observe that Chatman did not raise this issue in the trial court or in his opening brief before this court. It is well-settled that arguments not raised in the trial court are considered

waived on appeal. *Jackson v. Hooker*, 397 Ill. App. 3d 614, 617 (2010) (quoting *Shell Oil Co. v. Department of Revenue*, 95 Ill. 2d 541, 550 (1983)); *IPF Recovery Co. v. Illinois Insurance Guaranty Fund*, 356 Ill. App. 3d 658, 659 (2005) (" '[I]t has long been held that arguments not raised in the trial court are considered waived on appeal' " (quoting *Illinois Tool Works, Inc. v. Independent Machine Corp.*, 345 Ill. App. 3d 645, 652 (2003))). It also well-settled that points not raised in an opening brief are forfeited and cannot be argued for the first time in a reply brief. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); see also *Burlington Northern and Santa Fe Ry. Co. v. ABC-NACO*, 389 Ill. App. 3d 691, 717 (2009). Nonetheless, "an enactment satisfies the single subject requirement so long as the matters included within it have a natural and logical connection." *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 352 (1999). Here, the Registration Act requires offenders to register after their release from prison if they are convicted of certain enumerated offenses against youth or adults. These matters clearly have a natural and logical connection. Although the title of the Registration Act refers to "Youth," it also refers to "Murderer[s]," which includes Chatman's conviction here.

¶ 30　We therefore find that the circuit court did not err in granting the State Officials' motion, and in dismissing Chatman's petition with prejudice.

¶ 31　　　　　　　　　　　III. CONCLUSION

¶ 32　For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 33　Affirmed.