# Illinois Official Reports

## Appellate Court

**People v. Zetterlund, 2018 IL App (3d) 150435**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON ZETTERLUND, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0435 |
| Filed | March 23, 2018 |
| Decision Under Review | Appeal from the Circuit Court of McDonough County, No. 13-CF-60; the Hon. William E. Poncin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Benjamin Wimmer, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Matt Kwacala, State's Attorney, of Macomb (Patrick Delfino, Lawrence M. Bauer, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justice Lytton concurred in the judgment and opinion.<br>Justice McDade concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1        Defendant, Aaron Zetterlund, appeals his conviction contending that the Sex Offender Registration Act (730 ILCS 150/3(b) (West 2012)) and other related statutes applicable to sex offenders (collectively, the SORA statutory scheme) are unconstitutional. We affirm.

¶ 2                                                        FACTS

¶ 3        The State charged defendant with criminal sexual assault (720 ILCS 5/11-1.20(a)(2) (West 2012)). The evidence at trial established that on March 9, 2013, defendant was present at a party with the victim and several other individuals. During the course of the night, the victim became severely intoxicated and lost consciousness. While the victim was unconscious, defendant removed the victim's clothing and performed vaginal intercourse on the victim. Defendant's friend, Ethan Deyo, was present and recorded the assault on his phone. The victim did not recall any of these events. The next day, other individuals that were present at the party told the victim what happened, and the victim went to the hospital for a sexual assault examination. The victim stated that she never consented to having sexual intercourse with defendant.

¶ 4        Ultimately, the jury found defendant guilty of criminal sexual assault. The court sentenced defendant to six years' imprisonment and an indeterminate term of three years to life of mandatory supervised release (MSR). Because of defendant's conviction, he is subject to the restrictions and obligations set forth in the SORA statutory scheme for the remainder of his life.

¶ 5                                                     ANALYSIS

¶ 6        On appeal, defendant challenges the constitutionality of the SORA statutory scheme, which he is now subject to because of his present conviction. We review *de novo* a challenge to the constitutionality of a statute on appeal. *People v. Mosley*, 2015 IL 115872, ¶ 22. Statutes are presumed to be constitutional, and in order to overcome this strong presumption, defendant must "clearly establish its invalidity." *Id.* "A court will affirm the constitutionality of a statute or ordinance if it is 'reasonably capable of such a determination' and 'will resolve any doubt as to the statute's construction in favor of its validity.' " *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 20 (quoting *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20).

¶ 7        Defendant makes two arguments to support his contention: (1) the SORA statutory scheme violates the due process clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2) and (2) the SORA statutory scheme violates the proportionate penalties guarantees of the United States and Illinois Constitutions (U.S. Const., amend. VIII; Ill. Const. 1970, art. I, § 11).

¶ 8        Before analyzing each constitutional argument, we note that our supreme court has upheld prior versions of the SORA statutory scheme against similar constitutional challenges. See *People v. Cornelius*, 213 Ill. 2d 178 (2004); *People v. Malchow*, 193 Ill. 2d 413 (2000). Nevertheless, defendant contends that the SORA statutory scheme is different than the prior versions determined to be constitutional because recent additions have made the SORA statutory scheme so onerous that it no longer satisfies constitutional protections.

¶ 9    In support of his argument, defendant points out that the current version of the SORA statutory scheme, which has not been addressed by the supreme court, contains the following additional restrictions and obligations: (1) specific restrictions on where sex offenders may be present or live (sections 11-9.3 and 11-9.4-1 of the Criminal Code of 2012 (720 ILCS 5/11-9.3, 11-9.4-1 (West 2012))), (2) prohibitions against sex offenders working, at any time or any reason, within 500 feet of a school or public park or within 100 feet of a bus stop (*id.*), (3) requirements of annual renewal of driver's licenses (section 5-3-3(*o*) of the Unified Code of Corrections (730 ILCS 5/5-5-3(*o*) (West 2012))), (4) prohibitions against petitions for name change (section 21-101 of the Code of Criminal Procedure (735 ILCS 5/21-101 (West 2012))), (5) increases in the agencies with which a registrant must register in person (section 3(a) of the Sex Offender Registration Act (730 ILCS 150/3(a), (d) (West 2012))), (6) expansion of the information a registrant must provide when reporting (*id.* § 3(a)), (7) a shortening of the period in which a registrant must appear in person (*id.* § 7), and (8) an increase in initial and annual registration fees (*id.* § 3(c)(6)). With this background in mind, we turn to defendant's constitutional claims.

¶ 10                                    I. Due Process

¶ 11    First, defendant argues that the SORA statutory scheme violates the due process clauses of the United States and Illinois Constitutions. U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. Both the federal and state constitutions provide that no individual shall be deprived of life, liberty, or property without the due process of law. U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. Upon review, we find the SORA statutory scheme satisfies substantive and procedural due process requirements. Therefore, we hold the SORA statutory scheme does not violate defendant's due process rights under the United States and Illinois Constitutions.

¶ 12    Due process analysis requires two distinct inquiries: substantive due process and procedural due process. See *Doe v. City of Lafayette*, 377 F.3d 757, 767-68 (7th Cir. 2004). The appropriate inquiry under substantive due process analysis is "whether the individual has been subjected to 'the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.' " *Id.* at 768 (quoting *Bank of Columbia v. Okely*, 17 U.S. 235, 244 (1819)). If the statute does not impact a fundamental right, then we apply the rational basis test. *Cornelius*, 213 Ill. 2d at 203. "Pursuant to this test, a statute will be upheld if it 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *In re J.W.*, 204 Ill. 2d 50, 67 (2003) (quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991)). Under procedural due process, the government is only allowed to deprive a citizen of "life, liberty, or property" in accordance with certain procedural protections. *City of Lafayette*, 377 F.3d at 767-68.

¶ 13    At the outset, we note that two other districts in our appellate court have rejected the same argument defendant advances here. In both *In re A.C.*, 2016 IL App (1st) 153047, ¶¶ 35-79, and *People v. Pollard*, 2016 IL App (5th) 130514, ¶ 23, the court found that the current version of the SORA statutory scheme did not violate an individual's due process rights (substantive or procedural). We agree with the conclusions reached in *A.C.* and *Pollard* and adopt their reasoning.

¶ 14    In *A.C.*, a juvenile respondent, adjudicated as a delinquent of aggravated criminal sexual abuse, challenged the constitutionality of the SORA statutory scheme on due process grounds.

The court rejected respondent's procedural due process claim on the basis that the SORA statutory scheme affords individuals sufficient procedural safeguards. *A.C.*, 2016 IL App (1st) 153047, ¶ 66. As to respondent's substantive due process claim, the court found that respondent's claim did not involve a fundamental liberty right and, therefore, considered his claim under the rational basis test. *Id.* ¶ 57. The court held that the SORA statutory scheme satisfied the rational basis test as it is "rationally related to the purpose of protection of the public from sexual offenders and constitute a reasonable means of accomplishing this goal." *Id.*

¶ 15    Similarly, in *Pollard*, the court found that the SORA statutory scheme did not impact an individual's fundamental rights. Therefore, the court applied the rational basis test in considering defendant's substantive due process claim. The court ruled that the statutes satisfied the rational basis test because "[i]t is well established that there is a legitimate state interest behind the SORA Statutory Scheme. It serves the goal of protecting the public from sex offenders." *Pollard*, 2016 IL App (5th) 130514, ¶ 39. The court noted that "[a]lthough the SORA Statutory Scheme may be overinclusive, thereby imposing burdens on offenders who pose no threat to the public because they will not reoffend, there is a rational relationship between the registration, notification, and restrictions of sex offenders and the protection of the public from such offenders." *Id.* ¶ 42. As to defendant's procedural due process claim, the court rejected defendant's argument, finding that defendant enjoyed several procedural safeguards associated with his criminal proceedings and the restrictions and obligations created by the SORA statutory scheme were "not sufficiently burdensome to mandate the additional procedural protection of a mechanism to determine his risk of recidivism." *Id.* ¶ 48.

¶ 16    Based on the above decisions, which we believe are well reasoned and persuasively written, we reject defendant's contention that the restrictions and obligations included in the current version of the SORA statutory scheme violate his substantive and procedural due process rights.

¶ 17    In reaching this conclusion, we acknowledge two recent decisions issued by this court that found section 11-9.4-1 of the Criminal Code of 2012 (720 ILCS 5/11-9.4-1 (West 2012)) to be unconstitutional on substantive due process grounds in that it failed the rational basis test. See *People v. Pepitone*, 2017 IL App (3d) 140627, *appeal granted*, No. 122034 (Ill. May 24, 2017); *People v. Jackson*, 2017 IL App (3d) 150154. Section 11-9.4-1 makes it unlawful for a child sex offender or sexual predator to knowingly be present in any public park building or on real property comprising any public park (720 ILCS 5/11-9.4-1 (West 2012)). Section 11-9.4-1 was the sole restriction considered in *Pepitone*. *Jackson*, however, considered a broader constitutional challenge to the entire SORA statutory scheme. See *Jackson*, 2017 IL App (3d) 150154. The court in *Jackson* agreed with *Pepitone* as to section 11-9.4-1 (*id.* ¶ 25), but otherwise rejected defendant's broad constitutional challenge to the remaining provisions. *Id.* ¶¶ 24-25. The court upheld sections 3(c)(2.1), 3(a) and (d), 3(a), 6, 7, 3(b) and 3(c)(3) and 3(c)(4), 3(c)(6), and 7 and 10 of the Sex Offender Registration Act (730 ILCS 150/3(c)(2.1) (West 2014) (requiring that every sex offender register if convicted of any subsequent felony); 730 ILCS 150/3(a), (d) (West 2014) (increasing the number of agencies with which a registrant must register in person); 730 ILCS 150/3(a) (West 2014) (expanding the information a registrant must provide when reporting); 730 ILCS 150/6 (West 2014) (increasing the number of times a registrant must report in person); 730 ILCS 150/7 (West 2014) (expanding the length of time most registrants must register); 730 ILCS 150/3(b), (c)(3), (c)(4) (West 2014)

(shortening the period of time during which a registrant must appear in person from 10 to 3 days); 730 ILCS 150/3(c)(6) (West 2014) (raising the initial and annual registration fees); 730 ILCS 150/7, 10 (West 2014) (enhancing punishment for noncompliance). It also upheld section 5-5-3 of the Unified Code of Corrections (730 ILCS 5/5-5-3(o) (West 2014) (requiring the annual renewal of registrant's driver's license)), and section 11-9.32 of the Criminal Code of 2012) (720 ILCS 5/11-9.3 (West 2014) (restricting the presence of offenders within a school zone and prohibiting offenders from approaching, contacting, residing with, or communicating with a child within certain places)).

¶ 18    While we agree with *Jackson* to the extent it rejected defendant's broad constitutional challenges, we disagree with the finding that section 11-9.4-1 fails the rational basis test. Instead, we agree with the reasoning of the dissenting judges in both *Pepitone* and *Jackson*. Specifically, we find that the means adopted in section 11-9.4-1 "are a reasonable method of accomplishing the legislature's desired objective of protecting the public from sex offenders." *Pepitone*, 2017 IL App (3d) 140627, ¶ 31 (Carter, J., dissenting); *Jackson*, 2017 IL App (3d) 150154, ¶ 44 (O'Brien, J., concurring in part and dissenting in part). We emphasize that "[w]hether the statute could be more finely-tuned to accomplish that goal is a question for the legislature, not for the courts." *Pepitone*, 2017 IL App (3d) 140627, ¶ 32 (Carter, J., dissenting).

¶ 19                                    II. Proportionate Penalties

¶ 20    Defendant next contends that the SORA statutory scheme violates the proportionate penalties guarantees of the United States and Illinois Constitutions. U.S. Const., amend. VIII; Ill. Const. 1970, art. I, § 11. The proportionate penalties clause is coextensive with the eighth amendment's proportionality requirement. *People v. Patterson*, 2014 IL 115102, ¶ 106. The eighth amendment and the proportionate penalties clause "apply only to the criminal process where the government takes direct action to inflict punishment." *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 207 (2009). Although the critical determination is whether the restrictions and obligations of the SORA statutory scheme constitute a punishment, we need not reach this issue because defendant did not raise this issue in the circuit court.

¶ 21    Initially, we note that it is unclear if defendant is making a facial or as-applied constitutional challenge. An as-applied challenge is treated differently than a facial constitutional challenge—which may be raised at any time. *People v. Thompson*, 2015 IL 118151, ¶ 37. While a facial constitutional challenge may be raised at any time, an as-applied challenge is "dependent on the particular circumstances and facts of the individual defendant" and requires a sufficiently developed record. *Id.*

¶ 22    In defendant's brief, he does not specifically state which basis he is relying upon in support of his argument. Defendant indicates several times that the provisions of the SORA statutory scheme are unconstitutional "as applied" to him and asks this court to remove him from these restraints. However, defendant concludes that "[t]his court should strike down as unconstitutional SORA and related statutes." Defendant's conclusion suggests that he is making a facial challenge to the SORA statutory scheme, but defendant does not cite any specific law or make a specific argument that the SORA statutory scheme is unconstitutional on its face. Consequently, we find defendant has forfeited any argument that the SORA statutory scheme is facially unconstitutional. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); see also *Jackson*, 2017 IL App (3d) 150154, ¶ 21 (declining to consider whether the SORA

statutory scheme imposed unconstitutional *ex post facto* criminal penalties where defendant did not make a specific *ex post facto* claim).

¶ 23    Despite this, we consider the substance of defendant's argument, which compares the seriousness of his offense with the offenses of "the most violent and dangerous and recidivism-prone sexual offenders," to be an as-applied challenge. Before we can address the substantive merits of defendant's as-applied challenge, we must first determine if the record is sufficient for purposes of appellate review.

¶ 24    When making an as-applied constitutional argument, "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Thompson*, 2015 IL 118151, ¶ 37. "A court is not capable of making an 'as applied' determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional 'as applied' is premature." *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004); see also *Mosley*, 2015 IL 115872, ¶ 49 ("When there has been no evidentiary hearing and no findings of fact, the constitutional challenge must be facial."). But see *People v. Bingham*, 2017 IL App (1st) 143150, ¶ 21 (holding that an as-applied challenge may be raised for the first time on appeal if the record is sufficiently developed for review).

¶ 25    Here, defendant's as-applied challenge is based on his belief that the lifetime restrictions to which he is now subject to are disproportionate to his offense. In support, defendant notes his sentence, which was only two years longer than the minimum, his lack of criminal history, and the lack of any assessment as to his risk to reoffend. However, these factors alone are insufficient to show that defendant is unlikely to reoffend. In fact, nothing in the record affirmatively shows that defendant is unlikely to reoffend. The record contains no sex offender evaluation or other psychological evaluation assessing defendant's risk to reoffend. Defendant could have presented such evidence at sentencing, but did not. Without any evidence as to defendant's risk of recidivism, we find the record is simply insufficient to determine whether imposing lifetime registration requirements is grossly disproportionate to defendant's crime.

¶ 26    In reaching this conclusion, we acknowledge that defendant may be released from MSR in the future, yet still be subject to the SORA restrictions. According to defendant, the lifetime restrictions imposed by the SORA statutory scheme are disproportionate to his offense in light of the fact that he will remain restricted by these provisions, despite a *potential* future finding by the Prisoner Review Board discharging him from MSR. Stated another way, defendant believes that if he is discharged from MSR, he should also be free from any further SORA restrictions. It is true that defendant may one day receive a discharge from his indeterminate MSR when the Prisoner Review Board determines he "is likely to remain at liberty without committing another offense." 730 ILCS 5/3-3-8(b), 3-14-2.5(d) (West 2014). However, the record does not show that defendant has been discharged from MSR. Defendant's argument would require this court to speculate as to defendant's future status on MSR. It is therefore premature to consider this argument.

¶ 27                                    CONCLUSION

¶ 28    For the foregoing reasons, we affirm the judgment of the circuit court of McDonough County.

¶ 29          Affirmed.

¶ 30          JUSTICE McDADE, concurring in part and dissenting in part:

¶ 31          The majority affirms defendant's conviction and sentence. In coming to this conclusion, the majority makes three independent legal findings. I will address each finding in turn.

¶ 32          First, I concur with the majority's finding that the record is insufficient to determine whether imposing lifelong registration requirements violates the proportionate penalties clause (*supra* ¶ 25).

¶ 33          Second, I dissent from the majority's finding that section 11-9.4-1(b) of the Criminal Code of 2012, as part of the SORA statutory scheme (720 ILCS 5/11-9.4-1(b) (West 2014)), is constitutional on its face (*supra* ¶ 18). In the majority's analysis, it finds this court's previous decisions in *Pepitone* and *Jackson* were wrongly decided (*supra* ¶ 17). The majority in *Pepitone* and *Jackson* found section 11-9.4-1(b) unconstitutional on substantive due process grounds. *Pepitone*, 2017 IL App (3d) 140627, ¶ 24; *Jackson*, 2017 IL App (3d) 150154, ¶ 29. I reject the majority's conclusion that these decisions were and are wrong. Instead, I would continue to follow both decisions, unless the supreme court determines otherwise, as I believe they were correctly decided and compellingly written.

¶ 34          Third, I concur with the majority's finding that the remaining provisions of the SORA statutory scheme are constitutional under the due process clause (*supra* ¶ 16), because the current law is clear. However, I write separately on this issue to echo the same concerns expressed in my special concurrence in *Jackson*. See *Jackson*, 2017 IL App (3d) 150154, ¶¶ 34-40 (McDade, J., specially concurring). The SORA statutory scheme is broad, burdensome, and continues to grow even more restrictive. It lacks any mechanism by which an offender who poses little or no risk to reoffend can avoid placement on the sex offender registry at sentencing or can petition to remove himself from SORA's restrictions. If a released offender is not likely to reoffend, the restrictions imposed by the SORA statutory scheme serve no other purpose than to frustrate the ability of a person who has served the mandated sentence to reintegrate into society and to impose a politically motivated regimentation. Enacting punitive measures against a previously convicted individual is always more politically popular than taking a stand for liberty.

¶ 35          Additionally, and again despite having served the legislatively mandated sentence, the SORA statutory scheme still limits a released offender's ability to freely choose where he or she can live and work, to freely access public spaces, and to move freely throughout the state or country—fundamental elements of the constitutional right to the pursuit of happiness that inures to every citizen.[1] As I expressed in *Jackson*,

> "I believe the legislature has failed to equitably balance the various human interests impacted by SORA. As it stands, SORA fails to consider reasonable interests that an offender, who has completed the sentence the legislature deemed sufficient, especially

---

[1]The Declaration of Independence asserted, as self evident, that all men "are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the Pursuit of Happiness." The Declaration of Independence ¶ 2 (U.S. 1776). The ninth amendment to the United States Constitution states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX.

one who is unlikely to reoffend, has in resuming a normal family and work life." *Id.* ¶ 40.